Elliot J. Siegel (Bar No. 286798)
elliot@kingsiegel.com
Julian Burns King (Bar No. 298617)
julian@kingsiegel.com
**KING & SIEGEL LLP**
724 S. Spring Street, Suite 201
Los Angeles, California 90014
tel:  (213) 465-4802
fax: (213) 465-4803

Michael Y. Yadegaran (Bar No. 309669)
michael@avenue.law
**AVENUE LAW APC**
401 Wilshire Boulevard, 12th Floor
Santa Monica, CA 90401
tel:  (310) 882-7960
fax: (310) 882-7962

*Attorneys for Plaintiff*
SUNG KIM

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SUNG KIM**, an individual,<br><br>      Plaintiff,<br><br>      vs.<br><br>**STRATEGIC CAMPAIGN SOURCING LLC**, a California limited liability company; **PERFECTED CLAIMS LLC**, a U.S. Virgin Islands limited liability company; **CHRISTIAN ARCHER**, an individual; **WILLIAM SAMSON**, an individual; and **DOES 1-10**, inclusive,<br><br>      Defendants. | CASE NO. 2:24-cv-06494 MWF(PDx)<br><br>District Judge: Honorable Michael W. Fitzgerald<br><br>**JOINT RULE 26(f) REPORT**<br><br>Date: September 23, 2024<br>Time: 11:00 A.M.<br>Ctrm: 5A<br><br>Filed Date: May 17, 2024<br>Removal Date: August 1, 2024 |

TO THE COURT, ALL PARTIES, AND ALL ATTORNEYS OF RECORD:

Pursuant to Rules 16 and 26(f) of the Federal Rules of Civil Procedure, Local Rule 26-1, and the orders of the Court, Plaintiff Sung Kim ("Plaintiff") and Defendants Strategic Campaign Sourcing LLC and Perfected Claims LLC (collectively, "Defendants") submit the following Joint Report.

A. <u>Statement of the Case</u>

Named Plaintiff asserts claims under the California Fair Employment and Housing Act ("FEHA"), the California Labor Code, and common law, including: (1) Race Discrimination; (2) Gender Discrimination; (3) Age Discrimination; (4) Failure to Prevent Harassment, Discrimination, and Retaliation; (5) Retaliation in Violation of Cal. Labor Code § 98.6(k); (6) Retaliation in Violation of Cal. Labor Code § 1102.5; (7) Wrongful Termination in Violation of Public Policy; (8) Willful Failure to Pay Wages, Failure to Pay Vacation Pay, and Waiting Time Penalties; (9) Failure to Furnish Accurate Wage Statements, Permit Inspection of Personnel and Payroll Records; and (10) the Unfair Competition Law.

**Plaintiff's Further Statement**

Plaintiff was hired by Defendant as Director of Operations of Finance in November 2022 and was subsequently promoted to Senior Director in June 2023. Defendants retaliated against Plaintiff for complaining about Defendants' unlawful policy of misclassifying the majority of their California employees as exempt employees instead of non-exempt hourly workers. Defendants ignored Plaintiff's directives and eventually fired her (within 90 days of her last complaint) because of her outspoken position regarding SCS/PCL's widespread misclassification and attempts to advocate for the Labor Code rights of those employees who were wrongfully misclassified and owed significant wages. Defendants retaliated against Plaintiff by, among other practices, terminating her on or about October 4, 2023. Plaintiff therefore brings this action and is entitled to entitled to lost wages, back pay, front pay, and reasonable attorney's fees.

**Defendants' Further Statement**

Plaintiff alleges and Defendants deny that both Defendants were her co-employers. Defendant Strategic Campaign Sourcing LLC alone employed Plaintiff, most recently as its Director of Financial Operations, from November 16, 2022 through October 6, 2023, when she was laid off pursuant to a company-wide reduction-in-force. Plaintiff's allegations are inconsistent. She alleges that Defendants actually terminated her employment: (1) in retaliation for reporting certain payroll errors and/or the misclassification of certain California employees as exempt from overtime requirements under California law; and/or (2) due to age, race, and/or gender-based discrimination, in violation of the California Fair Employment and Housing Act ("FEHA").

Several of Plaintiff's claims are superfluous, including her common law claim for wrongful termination in violation of public policy, which is duplicative of her FEHA and Labor Code retaliation claims, and her unfair competition claim, for which she can neither collect damages nor any alleged disgorgement beyond what she could potentially recover pursuant to her other claims.

Plaintiff filed her Complaint concurrently with that of former Strategic Campaign Sourcing LLC Human Resources Representative Shelby Watkins, who alleges similar claims and who is represented by the same lawyers. *See Shelby Watkins v. Strategic Campaign Sourcing LLC, et al.*, Case No. 24-cv-04663-AMO (N.D. Cal. Aug. 1, 2024). With regard to alleged whistleblowing in opposition to employee misclassification, Ms. Watkins apparently seeks to use and possibly disclose attorney client privileged communications to which she had access while employed by Strategic Campaign Sourcing LLC. Plaintiff may also have had access to the contents of some or all of these communications in the course of her employment with Strategic Campaign Sourcing LLC or through subsequent unauthorized disclosures from Ms. Watkins. These privileged communications, however, are not theirs to waive, and cannot be used against Defendants in this or any other Action or for any other purpose.

**Subject Matter Jurisdiction**

Defendants contend that this Court has proper subject matter jurisdiction through removal because there is complete diversity between the Parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Plaintiff does not presently contend that jurisdiction is improper, but intends to conduct discovery into Defendants' citizenship.

**B.   Legal Issues**

**1.   Plaintiff's Contentions**

The primary legal issues in the case, or mixed issues of fact and law, are:

- Whether Plaintiff suffered adverse employment action or actions based on discrimination because of her race (Asian), gender (female), or age in violation of FEHA, and, if so, whether one or both Defendants can establish an affirmative defense by showing that they would have engaged in the same conduct for legitimate business reasons;

- Whether Plaintiff she suffered any adverse employment action retaliation in violation of Labor Code sections 98.6 and/or 1102.5 and, if so, whether one or both Defendants can establish an affirmative defense by showing that they would have engaged in the same conduct for legitimate business reasons;

- Whether Plaintiff is entitled to waiting time penalties for failure to pay her vacation upon termination of her employment, including whether a good faith dispute existed, based in law and/or fact, that the claimed additional wages were due and owing;

- Whether Plaintiff is entitled to civil penalties for failure to furnish accurate wage statements and/or failure to permit her to inspect her personnel records, including whether a reasonable good faith dispute existed, based in law and/or fact;

- Whether one or both Defendants wrongfully terminated Plaintiff in violation of public policy;

- Whether one or both Defendants violated the Unfair Competition Law and, if so, what relief is available to Plaintiffs and/or the public.

**2.   Defendants' Contentions**

The primary legal issues in the case, or mixed issues of fact and law, are:

• Whether Plaintiff was an employee of Defendant Perfected Claims LLC;

• Whether Plaintiff can prove that she suffered any adverse employment action or actions based on discrimination because of her race (Asian), gender (female), or age in violation of FEHA, and, if so, whether one or both Defendants can establish an affirmative defense by showing that they would have engaged in the same conduct for legitimate business reasons;

• Whether Plaintiff can prove that she suffered any adverse employment action retaliation in violation of Labor Code sections 98.6 and/or 1102.5 and, if so, whether one or both Defendants can establish an affirmative defense by showing that they would have engaged in the same conduct for legitimate business reasons;

• Whether Plaintiff is entitled to waiting time penalties for failure to pay her vacation upon termination of her employment, including whether a good faith dispute existed, based in law and/or fact, that the claimed additional wages were due and owing;

• Whether Plaintiff is entitled to civil penalties for failure to furnish accurate wage statements and/or failure to permit her to inspect her personnel records, including whether a reasonable good faith dispute existed, based in law and/or fact;

• Whether some or all of Plaintiff's claims are subject to dismissal and/or summary judgment, including, but not limited, because they are superfluous;

• Whether one or both Defendants wrongfully terminated Plaintiff in violation of public policy.

• Whether one or both Defendants violated the Unfair Competition Law and, if so, what relief is available to Plaintiff; and

• Whether Plaintiff mitigated her damages, if any.

C. **Parties and Evidence**

Named Plaintiff is Sung Kim.

The Defendants named in this action are Strategic Campaign Sourcing LLC, Perfected Claims LLC, Christian Archer, and William Samson.

Strategic Campaign Sourcing LLC is a limited liability company, and its sole member is William Samson. It has no subsidiaries, parents, or affiliates.

Perfected Claims LLC is a limited liability company, and its sole member is Christian Archer. It has no subsidiaries, parents, or affiliates.

Plaintiff has served Strategic Campaign Sourcing LLC, Perfected Claims LLC and has requested Defense Counsel confirm they are authorized to accept service on behalf of Christian Archer and William Samson given their residence. Failing that, Plaintiff intends to serve discovery to identify their locations and complete service.

### D.   Percipient Witnesses

**Plaintiff's Position:**

Pending further investigation, the following are likely to be percipient witnesses:

a. Sung Kim;
b. Shelby Watkins;
c. Plaintiff's coworkers;
d. Plaintiff's supervisors;
e. Human resources employees or representatives, who have yet to be identified;
f. Strategic Campaign Sourcing's personnel with the authority to make, enact, or enforce policy, who have yet to be identified;
g. Third parties with whom Strategic Campaign Sourcing may contract to provide services relevant to Plaintiff's claims, who have yet to be identified; and
h. Other employees or representatives of Strategic Campaign Sourcing, who have yet to be identified.

**Defendants' Position:**

Pending further investigation, the following are likely to be percipient witnesses:

a. Sung Kim;
b. Shelby Watkins;
c. Yasmine Haynes;
d. Emily Kobernick;

  e. Christian Archer;

  f. William Samson; and

  g. Other witnesses to be identified in Plaintiff's Initial Disclosure Statement, supplements thereto, and Plaintiff's responses to discovery requests.

Defendants reserve the right to amend/supplement these witnesses as they gain more information through discovery and further investigation.

### E. Key Documents

**Plaintiff's Position:**

Pending further investigation, key documents are likely to include but not be limited to:

  a. All documents comprising of Plaintiff's personnel file;

  b. All documents relating to, discussing, or referencing Plaintiff's hire.

  c. Defendants' policies and procedures;

  d. Documents sufficient to show Defendants' management structure, including all persons who directly or indirectly supervised Plaintiff, including but not limited to organizational charts;

  e. All documents relating to, discussing, or referencing Plaintiff's performance as Defendants' employee;

  f. Plaintiff's complaints regarding Defendants' labor and/or compensation practices;

  g. All documents relating to, discussing, or referencing Plaintiff's complaints about Defendants' labor and/or compensation practices;

  h. Documents showing the essential and marginal job duties of Plaintiff;

  i. Comparator evidence with respect to shift requests, assignments, scheduling, requests for accommodation, discipline, and termination;

  j. Any complaints of discrimination, harassment, or retaliation by any of Defendants' employees, and Defendants' responses to those complaints;

  k. Documents relating to any affirmative defenses asserted by Defendants.

**Defendants' Position:**

Defendants anticipate the following documents may be relevant to the claims and defenses in this action:

a. Plaintiff's personnel records;

b. Plaintiff's payroll records;

c. Relevant employee handbooks and personnel policies;

d. Documents reflecting communications to or from Plaintiff relating to the allegations of her Complaint;

e. Documents reflecting communications about Plaintiff relating to the allegations of her Complaint;

f. Documents reflecting the implementation of the reduction-in-force;

g. Plaintiff's medical, psychological, and other records relating to her alleged emotional distress injuries; and

h. Records reflecting Plaintiff's alleged economic damages and mitigation efforts, including documents reflecting her efforts to obtain other employment along with her income, if any, from other sources.

F. **Damages**

**Plaintiff's Position**

Plaintiff seeks economic damages in the form of back pay and front pay. Plaintiff further seeks non-economic damages in the form of impairment of reputation, personal humiliation, mental anguish and suffering, other noneconomic harm resulting from the retaliation, and other special damages as permitted by law, as well as attorney's fees and costs of suit.

The realistic range of damages is estimated by Plaintiff as follows:

1. <u>Past Economic Damages</u>: Plaintiff's past economic damages falls into the following categories: lost salary; lost bonuses; lost 401k matching; lost benefits; interest; and a tax offset, which are estimated at no less than $140,712.

    a. <u>Lost Salary</u>: As of her termination, Plaintiff had a base salary of approximately $120,000 per year. Her lost salary to date is no less than $116,712.

    b. <u>Lost bonuses</u>: A bonus of no less than $24,000 to $36,000, which was promised to Ms. Kim, due in December 2023.

    c. <u>Lost benefits</u>: the fair market value of Plaintiff's fringe benefits, including but not limited 401(k) matching, PTO, and health and/or disability insurance, is presently unknown. The benefits will be the subject of discovery. Lost fringe benefits will continue to accrue, either in whole or part, until Plaintiff finds a substantially similar job and/or trial.

    d. <u>Prejudgment interest</u>: Under federal law, Plaintiff is entitled to recover prejudgment interest at the statutory rate beginning on the date each loss occurs. For a wrongfully terminated employee, that means each "lost" pay period. Plaintiff has not made this calculation yet. Plaintiff will retain an expert to make this calculation.

    e. <u>Tax offset</u>: Because a jury verdict will result in a lump sum payment in one tax year, Plaintiff will suffer adverse tax consequences over and above what she would have suffered had she not been terminated. Stated differently, if Plaintiff had not been wrongfully terminated, her salary would have been spread out over several years, resulting in a lower tax burden. California and federal law permit a wrongfully terminated employee to recover an offset for such. Because this calculation requires specialized knowledge, Plaintiff reserves the right to retain an appropriate expert to calculate the amount of tax offset necessary to make Plaintiff whole.

2. <u>Future Economic Damages</u>: Plaintiff will continue accruing economic damages (lost salary, lost bonuses, and lost fringe benefits) until she obtains substantially similar employment.

a. <u>Tax offset</u>: Because a jury verdict will result in a lump sum payment in one tax year, Plaintiff will suffer adverse tax consequences over and above what she would have suffered had she not been terminated. Stated differently, if Plaintiff had not been wrongfully terminated, her salary would have been spread out over several years, resulting in a lower tax burden. California and federal law permit a wrongfully terminated employee to recover an offset for such. Because this calculation requires specialized knowledge, Plaintiff reserves the right to retain an appropriate expert to calculate the amount of tax offset necessary to make Plaintiff whole.

3. <u>Past Special Damages</u>: Plaintiff leaves the amount of past emotional distress damages to the discretion of the jury.

4. <u>Future Special Damages</u>: Plaintiff leaves the amount of future emotional distress damages to the discretion of the jury.

5. <u>Reputational injury</u>: Reputational injury is a component of Plaintiff's special damages. Plaintiff leaves the amount of reputational injury to the discretion of the jury.

6. <u>Attorney's fees</u>: at this stage, it is impossible to predict how many hours Plaintiff's counsel will put into the case. Attorney's fees will be calculated after trial through the Lodestar method.

7. <u>Expert witness fees</u>: at this stage, it is impossible to predict what Plaintiff's expert witness fees will be after discovery and trial. Plaintiff intends to retain experts.

**Defendants' Position**

Defendants deny that Plaintiff has suffered any damages, and deny that Plaintiff is entitled to any of the relief sought.

**G.   Insurance**

Defendants have no insurance in this action.

**H.   Motions**

The Parties stipulate that opposition papers for discovery motions shall be due 14 days prior to hearing and reply papers shall be due 7 days prior to hearing. The Parties will submit a written stipulation to the Court in conformance with their agreement.

**I.   Manual for Complex Litigation**

The case does not require use of the Manual of Complex Litigation.

**J.   Status of Discovery**

The Parties have agreed to exchange initial disclosures on September 30, 2024, and have also agreed that each side may begin to serve discovery requests prior to the Scheduling Conference in light of the Court's instructions at 2:8-15 of the Scheduling Order.

**K.   Discovery Plan**

The Parties will exchange initial disclosures by the September 30, 2024 deadline.

Except as set forth below or otherwise agreed to by the Parties or ordered by the Court, the Parties agree that the scope of discovery shall be that set forth in Federal Rules of Civil Procedure 26(b)(1). The Parties further agree to work cooperatively toward producing any such relevant data in a mutually agreeable format, pursuant to Fed. R. Civ. P. 34. The Parties are in the process of meeting and conferring on a search term/ESI protocol as part of those efforts.

The Parties will have submitted a proposed Stipulated Protective Order by the hearing. The Parties will consider stipulating to remote depositions on a case-by-case basis and will also meet and confer regarding the agreed-upon rules of conducting any stipulated remote depositions.

**Coordination of Discovery in Related Cases:**

As reflected in the Notice of Pendency of Other Actions, there are two other U.S. District Court actions with overlapping legal theories and for which the plaintiffs are represented by the same counsel: (1) *Shelby Watkins v. Strategic Campaign Sourcing LLC, et al.*, U.S. District Court for the Northern District of California Case No. 3:24-cv-04663-

AMO (the "*Watkins* Case"); and (2) *Angela Hernandez v. Strategic Campaign Sourcing LLC, et al.*, U.S. District Court for the Northern District of California Case No. 3:24-cv-04662-TLT (the "*Hernandez* Case") (together with this case, the "Related Cases").  The Parties have agreed to coordinate certain aspects of discovery in the Related Cases.

Pursuant to Federal Rules of Civil Procedure, Rule 29(b), the Parties have agreed to the following modifications to discovery procedures in the Related Cases:

(1) The Parties will provide separate Disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure, Local Rules, and General or Standing Orders ("Disclosures") for each of the Related Cases.

(2) Discovery responses (but not Disclosures) and document productions (including any document productions pursuant to any non-expert Disclosures) produced in any of the Related Cases may be used in each of the Related Cases subject to relevance, objections, privileges, and admissibility.

(3) Non-expert nonparty discovery responses produced in any of the Related Cases may be used in each of the Related Cases subject to relevance, objections, privileges, and admissibility.  The Parties will work together to avoid duplicative nonparty discovery.

(4) The Parties will generally follow the discovery rules for Disclosures (including Expert Disclosures), Interrogatories, Requests for Inspection and Production, and Requests for Admission as set forth in the Federal Rules of Civil Procedure (including Rules 26 through 37), with the following exceptions:

(a) Individual depositions shall be limited to a single deposition to be taken simultaneously with respect to all Related Cases.  However, such depositions shall not be limited to a single seven (7) hour day but may continue up to fourteen (14) hours divided over not less than two (2) days, unless the Federal Rules of Civil Procedure would

permit additional time, or the Parties agree to or a Court permits to additional time.[1]

(b) The Parties shall identify individuals designated to testify on behalf of an organization in advance (and not less than fifteen (15) calendar days in advance) to facilitate the process, provided such depositions are noticed sufficiently in advance to allow such designation.

(c) The Parties to the Related Cases expressly do not agree that Expert disclosures, reports, and testimony in one Related Action is admissible in any other Related Action, particularly since such evidence may not overlap. However, the Parties agree to meet and confer on the issue as necessary to avoid unnecessary duplication of expert discovery.

(5) Parties to the Related Cases shall make all reasonable efforts to coordinate discovery to avoid duplicative requests.

(6) Deposition transcripts (including originals and certified copies) prepared from non-expert depositions which are properly noticed in any Related Action and which would be admissible under the Federal Rules of Civil Procedure and the Federal Rules of Evidence may be used in all Related Cases, subject to any properly preserved objections as to the form of questions or answers and any recognized privileges and objections as to other matters.

(7) The Parties will propose protective orders in each of the Related Cases which expressly provide that confidential designations made in one Related Case will be treated as confidential designations in all Related Cases.

**Plaintiff's Further Statement:**

Plaintiff intends to take the deposition of those individuals identified in Section D(2),

---

[1] This does not change the rules applicable to the length of a 30(b)(6) deposition: "For purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition." Fed. R. Civ. P. 30.

as well as depose each defendant pursuant to F.R.C.P. 30(b)(6). To the extent that Plaintiff appears likely to exceed the 10-deposition limit, Plaintiff will seek to meet and confer with Defendants regarding stipulating to additional depositions or will petition the Court for such relief. Plaintiff anticipates completing all depositions no later than the close of fact discovery.

Plaintiff also intends to serve written discovery necessary to establish the facts of Plaintiff's wrongful termination based on her protected complaints. Plaintiff intends to meet and confer with Defendants regarding lifting the 25 request limit as to Interrogatories and Requests for Admissions as the case proceeds.

Plaintiff does not believe that any phases or limitation regarding discovery is appropriate in this matter.

**Defendants' Position**

Defendants seek an agreement or an order preventing duplicative discovery motions in the Related Cases, but Plaintiff is unwilling to enter any agreement to coordinate discovery motions.

**L.   Discovery Cut-Off**

The Parties proposed fact discovery cut-off dates are on the worksheet attached hereto as **Exhibit A**.

**M.   Expert Discovery**

The Parties proposed expert discovery deadlines and expert discovery cut-off dates are on the worksheet attached hereto as **Exhibit A**.

**N.   Dispositive Motions**

**Plaintiff's Further Statement**

Plaintiff does not envision filing a dispositive motion at this time.

**Defendants' Further Statement**

Defendants anticipate potentially filing Motion to Transfer this and the Watkins and Hernandez actions for multidistrict litigation, discovery motions, a motion for summary judgment and/or partial summary judgment, and motions in limine.

**O.     Settlement / Alternative Dispute Resolution (ADR)**

Pursuant to L.R. 16-15.4, Plaintiff and Defendants are amenable to private mediation or a settlement conference or mediation before a magistrate judge..

**Plaintiff's Further Statement**

The Parties previously discussed private mediation of this case but Defendants failed to agree to any of Plaintiff's proposed mediators or provide informal discovery necessary to effectively mediate the dispute.

**Defendants' Further Statement**

Defendants wish to participate in private mediation.

**P.     Trial Estimate**

**Plaintiff's Further Statement**

Plaintiff anticipates trial length of 10 court days. Plaintiff seeks a jury trial. Plaintiff anticipates calling between 8-12 witnesses, not including party witnesses.

Plaintiff proposes a trial date of December 2, 2025.

**Defendants' Further Statement**

Defendants also anticipate trial length of 10 court days. Defendants request a bench trial.  Defendants anticipates calling between 10-12 witnesses, including party witnesses. Defendants propose a trial date of March 30, 2026.

**Q.     Trial Counsel**

Plaintiff will be represented at trial by Elliot J. Siegel of King & Siegel, LLP and Michael Y. Yadegaran of Avenue Law APC.

Defendants will be represented at trial by Timothy L. Reed and Marc A. Koonin of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

**R.     Independent Expert or Master**

The Parties do not anticipate a need to appoint an independent expert or master.

**S.     Timetable**

The Parties proposed pretrial and trial dates are on the worksheet attached hereto as **Exhibit A**.

### T. Other Issues

Plaintiff is unaware of any unusual issues affecting the status or management of this case other than the location of the Defendants, who reside in the U.S. Virgin Islands. However, Plaintiff is aware of potential privilege issues, and to the extent that there is privileged information that has not been waived that she was privy to, she will adhere to any obligations incumbent on her.

Defendants identify the following additional issues.

First, Defendants have asked Plaintiff to stipulate to coordinated discovery in this Action. However, to the extent that Plaintiff will not agree, Defendants will likely file a Motion to Transfer this and other overlapping cases to for resolution in multidistrict litigation and/or seek an appropriate protective order limiting duplicative discovery.

Second, as set forth above, Defendants object to any use or disclosure by Plaintiff of their attorney-client communications to which Plaintiff may be privy.

Third, Defendants note that many key witnesses in this case are residents of the U.S. Virgin Islands.

DATED: September 9, 2024

Respectfully submitted,
KING & SIEGEL LLP

By: */s/ Elliot J. Siegel*
Elliot J. Siegel
Attorneys for Plaintiff
SUNG KIM

DATED: September 9, 2024

AVENUE LAW APC

By: */s/ Michael Y. Yadegaran*
Michael Y. Yadegaran
Attorneys for Plaintiff
SUNG KIM

DATED: September 9, 2024

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Marc A. Koonin*
Timothy L. Reed
Shannon R. Clawson
Marc A. Koonin

Attorneys for Defendants STRATEGIC CAMPAIGN SOURCING LLC AND PERFECTED CLAIMS LLC

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that Marc A. Koonin and Michael Y. Yadegaran, on whose behalf this filing is jointly submitted, have concurred in this filing's content and have authorized me to file this document.

*/s/ Marc A. Koonin*

*/s/ Michael Y. Yadegaran*